Mary Pekras, Insane, by Her Next Friend, William Pekras, Appellee, v. The Prudential Insurance Company of America, Appellant.

Gen. No. 39,366.

Heard in the second division of this court for the first district at the February term, 1937. Opinion filed October 19, 1937.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM and WILLIAM S. ALLEN, both of Chicago, of counsel.

DANIEL M. DEVER, of Chicago, for appellee; DANIEL V. GALLERY, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

William Pekras, as next friend of Mary Pekras, an insane person, brought an action against the Prudential Insurance Company of America for permanent disability benefits under a policy issued by defendant on the life of Mary Pekras. Trial was had before the

court without a jury, resulting in a judgment for plaintiff of $750 and costs, from which this appeal is prosecuted.

The insured applied for the policy in question on July 8, 1930, and the first monthly premium was paid on that date. The policy was issued July 28, 1930, and September 28, 1930, she was adjudicated insane and committed to the Chicago State Hospital. Plaintiff brought suit October 14, 1934, claiming nine quarterly instalments of $58.84 each and a refund of 36 premium payments theretofore made of $5.04 each.

The policy included an agreement on the part of defendant to pay permanent disability benefits in case the insured should become totally and permanently disabled from bodily injury or disease to such an extent as to become incapacitated from engaging in any occupation for remuneration or profit, provided: "that such total disability shall occur after the payment of the first premium on this policy, while the policy is in full force and effect. . . ." It contained also a so-called incontestability clause, reading as follows:

"This Policy shall be incontestable after one year from its date of issue, except for non-payment of premium, but if the age of the Insured be misstated the amount or amounts payable under this Policy shall be such as the Premium would have purchased at the correct age."

By its answer defendant set forth two principal defenses: (1) that the total disability of the insured occurred before the payment of the first premium; and (2) that the benefits, if any, were not payable to the husband as next friend of the insured, but could properly be paid only to a conservator or other legal representative.

In support of the first defense defendant sought to show by the testimony of two doctors that the insanity and total disability of Mary Pekras occurred prior

to July 8, 1930. It was plaintiff's contention that the incontestability clause of the policy precluded defendant from showing that the disability antedated the payment of the first premium, and the court, after considerable discussion, adopted plaintiff's theory and found as a matter of law that defendant was not entitled to produce evidence tending to show that the insured had become insane prior to the payment of the first premium. Accordingly the objection of plaintiff's attorney to the proffered evidence of defendant was sustained. The principal question therefore presented for determination is whether or not the court erred in excluding evidence offered in support of the defense interposed.

A similar situation arose in *John Hancock Mut. Life Ins. Co. v. Hicks,* 43 Ohio App. 242, 183 N. E. 93, wherein it was held that the beneficiary, seeking to recover on a life policy containing similar disability provisions, was required to show that the disease was contracted by insured after the date of the issuance of the policy, since the policy provided that if the insured should become wholly and permanently disabled by disease contracted after date thereof certain payments would be made, and the incontestability clause only prevented contest by the insurer respecting any liability incurred by it under the terms of the contract, and did not relieve the party seeking to recover, in the first instance, of establishing its right to recover under the specific language of the policy.

In *Metropolitan Life Ins. Co. v. Conway,* 252 N. Y. 449, 169 N. E. 642, the Metropolitan Life Insurance Company, as petitioner, applied to the superintendent of insurance for his approval of a rider to be attached to its policies providing that "death as a result of service, travel or flight in any species of air craft, except as a farepaying passenger, is a risk not assumed under this policy. . . ." Under the New York

statute every policy is required to contain a provision for its incontestability after two years. The question therefore arose as to whether the proposed rider was inconsistent with the statute, and the court held that it was not, saying that ''the provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.'' The court in its opinion distinguished between a denial of coverage and a defense of invalidity, and quoted from *Sanders v. Jefferson Standard Life Ins. Co.* (C. C. A.), 10 F. (2d) 143, pointing out that '' 'a provision for incontestability does not have the effect of converting a promise to pay on the happening of a stated contingency into a promise to pay whether such contingency does or does not happen.' '' Various other cases cited by defendant support this construction of an incontestability clause, viz.: *Prudential Ins. Co. v. Mosley,* 66 P. (2d) 35; *Bankers Life Co. of Des Moines v. Sone,* 86 F. (2d) 780; *Baker v. Prudential Ins. Co.,* 279 Ill. App. 5; *Apter v. Home Life Ins. Co.,* 266 N. Y. 333, 194 N. E. 846.

Defendant repeatedly stated to the court upon the hearing of this cause that it was not its purpose to contest the policy, that if the insured had died the Prudential Insurance Company would have paid the face value of the policy without any question, but that it denied liability under the permanent disability clause, because, as it contended, insanity was present at the time the first premium was paid, and did not ''occur *after* the payment'' thereof. It clearly stated its defense in the answer filed, and under the authorities hereinbefore cited, and the general rule as ex-

pressed in various cases discussed in defendant's brief, it became an issue of fact as to whether or not the disability occurred prior or subsequent to the payment of the first premium. On this issue defendant was entitled to offer evidence, and the court in refusing to admit and consider such evidence, deprived defendant of substantially the only defense it had.

We do not pass upon the issues of fact because the case will have to be retried and a determination made, either by the court or jury, after a full hearing, as to whether or not the insured became disabled by reason of insanity before or after the premium was paid.

The gravamen of the remaining defense interposed is that William Pekras, as next friend of the insured, is not entitled to receive the disability payments. He is designated as the beneficiary in the policy but is entitled to receive the face value thereof only in the event of the insured's death. Defendant argued that a conservator should have been appointed and the suit instituted in the conservator's name. After a discussion before the trial court, plaintiff's counsel conceded that the husband of insured was not entitled to receive these payments, but stated that it was his intention, in the event judgment was entered, to apply for letters of conservatorship and cause payments to be made to the conservator on behalf of Mary Pekras. Inasmuch as the cause will have to be retried it will be a simple matter, before retrial, to apply for letters of conservatorship and substitute the appointed conservator as plaintiff.

For the reasons stated the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.